UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| GLORIA HAWKINS,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　Defendant. | No. ED CV 13-00917-VBK<br><br>MEMORANDUM OPINION<br>AND ORDER<br><br>(Social Security Case) |

　　　This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the Administrative Record ("AR") before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified AR.

　　　Plaintiff raises the following issues:
　　　1.　Whether the Administrative Law Judge ("ALJ") erred in

```
              determining there were no mental impairments other than
              alcohol abuse in this case in light of the testimonial and
              documentary evidence;
      2.      Whether the ALJ erred in not finding Plaintiff met or
              equaled a Listing level impairment;
      3.      Whether the ALJ erred in not contemplating additional
              factors in the residual functional capacity ("RFC")
              assessment, such as whether Plaintiff needed to elevate her
              legs; and
      4.      Whether the ALJ erred in his credibility assessment of
              Plaintiff and breached his duty to work up the file
              properly.
```
(JS at 3.)

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that for the reasons set forth, the decision of the Commissioner must be reversed and the matter remanded.

**I**

**THE ALJ DID NOT ERR IN FAILING TO ASSESS**

**THAT PLAINTIFF HAS A MENTAL IMPAIRMENT**

In Plaintiff's first issue, she asserts error because the ALJ failed to take account of one line in her testimony at the administrative hearing that she takes pills for depression. (AR 44.) In addition, Plaintiff's counsel notes a "suggestion" of an eating disorder, citing to a list of medications, one of which is for an earing disorder. (AR 166.)

Case 5:13-cv-00917-VBK   Document 18   Filed 03/11/14   Page 3 of 10   Page ID #:683

As a legal basis to raise this issue, Plaintiff cites <u>Keyser v. Commissioner Social Security Administration</u>, 648 F.3d 721 (9th Cir. 2011), for the proposition that where there is a "colorable claim of mental illness" remand is required where the ALJ does not perform the requisite analysis of mental impairments. The facts of <u>Keyser</u>, however, are vastly different than this case. While in this case the only indication of any possible mental impairment is a line of testimony from Plaintiff herself at the administrative hearing, in <u>Keyser</u>, the plaintiff had treating doctors who diagnosed her with bipolar disorder and paranoid and schidotypal personality traits. There was a medical source statement indicating moderate limitations in several areas of mental functioning. Considering this record, the Circuit held that the ALJ's failure to assess the nature and extent of plaintiff's mental impairment was not harmless because the plaintiff had demonstrated a "colorable claim" of mental impairment. (<u>See</u> <u>Keyser</u>, 648 F.3d at 726-727.)

Further, although Plaintiff indicated in her Disability Report - Appeal that she visited an unnamed facility in San Bernardino, California, beginning in February 2011, there are no records from any such facility. The Court notes that at the hearing, Plaintiff was represented by the same counsel who represents her in this litigation. (AR 32.)

With regard to a possible eating disorder, at the administrative hearing, Plaintiff specifically denied that she had a mental eating disorder. (AR 39.)

Finally, as the Commissioner notes, any error in failing to assess depression or an eating disorder at Step Two would be harmless because the ALJ found severe impairments and then proceeded to

3

subsequent steps in the sequential analysis.

## II
## THE ALJ DID NOT ERR IN FINDING THAT PLAINTIFF DID NOT MEET OR EQUAL A LISTING LEVEL IMPAIRMENT

Plaintiff's second issue asserts that the ALJ erred in not finding that she met or equaled certain Listing level impairments. Plaintiff's argument is relatively brief (consuming less than two pages of the JS). Indeed, Plaintiff does not argue in any detail how the medical evidence in the record would support that she meets or equals Listings identified as 5.08, 7.02, and 7.03. She also argues that the ALJ agreed that Plaintiff "would have met" Listing 5.08. (JS at 11, citing AR 55.) That is somewhat of a misleading argument, in that the ALJ only apparently concluded that Plaintiff "would have met" that Listing if other medical criteria had been satisfied.

The Commissioner undertakes an extensive discussion of the medical evidence and compares this to the requirements of the three Listings. The Court does not feel compelled to summarize this evidence, especially since Plaintiff has not provided the Court with any argument as to exactly what evidence in the record would satisfy any of the Listings, nor has she provided much of an equivalency argument. But, in any event, the Court will provide a brief summary.

With regard to Listing 5.08, which concerns weight loss due to any digestive disorder, the ALJ pointed out that Plaintiff had not met the durational requirement of the Listing. (AR 38-39, 55-56.) Further, the evidence in the record indicates that during the applicable time period, Plaintiff's weight and height were within normal ranges.

Listing 7.02 describes chronic anemia. There are requirements

that the individual have received one or more blood transfusions at an average of at least one every two months, or evaluation of the resulting impairment under criteria for the affected body system. The Listing specifically requires hematocrit persisting at 30% or less due to any cause. Plaintiff did not prove this, nor did she demonstrate that she had the required frequency of blood transfusions.

Finally, with regard to Listing 7.05, which describes sickle cell disease, Plaintiff failed to prove that she meets the requirements of the subparagraphs within that Listing.

In making his evaluation with regard to whether or not Plaintiff met or equaled any of the Listings, the ALJ properly reviewed the medical evidence and the expert opinion of the State Agency physician. (AR 391-495, 396-398, 399-401.)

Further, it was discretionary whether the ALJ utilized a Medical Expert ("ME") to determine whether or not Plaintiff met the Listings. See 20 C.F.R. § 404.1527(e)(2)(iii).

Plaintiff has not demonstrated that the ALJ erred in failing to find equivalence despite her contention that she comes close to meeting the requirements of certain of the Listings.

**III**

**THE ALJ PROPERLY ASSESSED PLAINTIFF'S RESIDUAL FUNCTIONAL CAPACITY**

In Plaintiff's third issue, she contends the ALJ erred in assessing her RFC. The ALJ determined that Plaintiff's RFC allows her to perform less than a full range of sedentary work. (AR 26.) At Step Five of the sequential evaluation process, the ALJ determined that Plaintiff can perform her past relevant work as a job coach. (AR 27.) Plaintiff notes that the Dictionary of Occupational Titled ("DOT")

classifies this work as sedentary, but it is typically performed at the light exertional level and that Plaintiff did not perform it at the sedentary level, either. (AR 48.)

Plaintiff asserts that the ALJ failed to account for asserted side effects from medications. Further, that Plaintiff testified regarding her leg swelling which Plaintiff asserts should have been credited. If, Plaintiff argues, the ALJ had accepted her complaints of fatigue and tiredness, she would have been found disabled. (See JS at 19.)

The ALJ evaluated a significant level of medical evidence in the record. (AR 182-514.) The ALJ also indicated that he reviewed recent medical evidence from 2011. (See AR at 27.)

With regard to the leg swelling issue, there is evidence that on some occasions Plaintiff had edema in her right leg as well as some abdominal pain. But there are also many occasions, as the Commissioner notes, where she did not have these issues, or did not appear to be in pain or distress. The ALJ resolved this evidence against a finding of disability.

While Plaintiff's more recent findings showed a history of anemia and weight loss, a more complete picture of the medical evidence in or about 2011 does not support disabling findings. (See, generally, JS at 22-23.)

The ALJ relied upon the findings of the State Agency medical consultant who opined that Plaintiff had the ability to perform light exertional work. (AR 392.) The ALJ further restricted Plaintiff to less than sedentary exertion, given her testimony that she could lift ten pounds and be on her feet less than three hours day. (AR 26-27, 40, 43.)

With regard to asserted side effects from medication, there are no indications of this in the extensive treatment notes, or any indication of further restrictions from medications beyond those assessed in the RFC.

With regard to any variance between the DOT and Plaintiff's past performance of her job, the ALJ was within his discretion in determining that Plaintiff could perform the job as generally performed (sedentary) based upon testimony of the vocational expert in response to hypothetical questions.

For the foregoing reasons, the Court determines that the ALJ properly determined Plaintiff's RFC.

## IV

## **THE ALJ'S CREDIBILITY ASSESSMENT IS LEGALLY INADEQUATE AND THIS MATTER MUST BE REMANDED**

The ALJ's credibility assessment is a classically judicially unreviewable statement: that Plaintiff's recitation of her subjective symptoms is not credible to the extent it is inconsistent with the determined RFC. (AR 26.) This conclusory statement falls woefully short of the legal requirements of a correct credibility assessment.

The weight to be given to a claimant's statements concerning symptomology are governed by clear procedural requirements and applicable regulations and case law. 20 C.F.R. §404.1529 is entitled, "How we evaluate symptoms, including pain." In subsection "a", the regulation provides that, "In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." The regulation

describes objective medical evidence as consisting of "medical signs and laboratory findings." The definition of "other evidence" is contained in 20 C.F.R. §§404.1512(b)(2) through (6) and 404.1513(b)(1), (4), and (5), and (d). As stated in §404.1529(a),

> "These include statements or reports from you, your treating or non-treating source, and others about your medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any evidence showing how your impairment(s) and any related symptoms affect your ability to work."

The regulation also indicates that a claimant's statements about symptoms, including pain, will be considered, but, importantly, notes that,

> "However, statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence ... would lead to a conclusion that you are disabled."

In 20 C.F.R. §404.1529(c)(3), it is specifically provided that the claimant's statements about symptoms will be considered. Relevant factors to be considered are enumerated, and include the following: daily activities [referred to in this Memorandum Opinion as activities of daily living, or ADL], location, duration, frequency and intensity of pain or other symptoms; precipitating and aggravating factors;

8

type, dosage, effectiveness and side effects of any medications; treatment other than medication which has been received; and any other measures used to relieve pain and other symptoms."

Evaluation of symptoms is also guided by Social Security Ruling ("SSR") 96-7p. In what is often described as a two-step analysis, the first step consists of a determination of whether there is an underlying medically determinable physical or mental impairment which could reasonably be expected to produce the individual's pain or other symptoms. The second step involves an evaluation of the extent to which these symptoms limit an individual's ability to do basic work activities. See also Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991)(en banc). Where the first step has been met, it is the Commissioner's burden to articulate clear and convincing reasons to reject the claimant's testimony regarding subjective symptoms. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998)(citing Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)). Otherwise, the Commissioner must articulate at least specific and legitimate reasons to reject subjective symptom testimony. See Bunnell, 947 F.2d at 347.

An ALJ's statement that subjective symptoms are not credible to the extent they are inconsistent with a determined RFC is neither clear and convincing or even close to specific and legitimate. Plaintiff's counsel correctly notes that the ALJ simply set forth boilerplate language. The Commissioner's attempt to resuscitate this Decision by citing medical evidence that is not referenced one iota in the ALJ's discussion does not constitute acceptable argument. It is abundantly clear that a Decision of an ALJ must rise or fall within its four corners, not based on an evidentiary reconstruction by either party. The only possible specificity in the ALJ's Decision is a

statement that despite limitations which Plaintiff alleged, she testified that on a good day she could clean her room. (AR 26.) Unfortunately, this strikes the Court as nothing more than a throwaway line.

It is extremely disappointing for the Court to see justice delayed. In Social Security cases, credibility analysis is a factor in almost every administrative decision. The Court presumes that ALJs are properly trained to make credibility assessments according to both applicable regulations, which specify factors that must considered, and case law. This case must be remanded, which will result in significant additional expense, and, perhaps more importantly, another lengthy period of time before which the determination of whether Plaintiff is or is not disabled can be made. This might not have been necessary if the ALJ had simply followed well charted and well recognized rules of credibility assessment.

For the foregoing reasons, this matter must be remanded for further hearing consistent with this Memorandum Opinion.

**IT IS SO ORDERED**.

DATED: March 11, 2014              /s/
                                   VICTOR B. KENTON
                                   UNITED STATES MAGISTRATE JUDGE